**FOR PUBLICATION**

In the

United States Court of Appeals

For the Eleventh Circuit

————————————————————

No. 24-14048

Non-Argument Calendar

————————————————————

JOHN H. OWOC,

*Plaintiff-Appellant,*

*versus*

THE LIQUIDATING TRUSTEE ON BEHALF
OF THE LIQUIDATING TRUST,

*Defendant-Appellee.*

————————————————————

Appeal from the United States District Court
for the Southern District of Florida
D.C. Docket No. 0:23-cv-62016-RS,
Bkcy No. 0:22-bk-17842-PDR

————————————————————

Before JORDAN, KIDD, and WILSON, Circuit Judges.

JORDAN, Circuit Judge:

We address in this appeal whether a corporate debtor's Subchapter S election constitutes property of the bankruptcy estate.

**I**

John Owoc founded VPX in 1993 and served as a director and officer until 2023. In 1997, Mr. Owoc, as VPX's sole shareholder, elected to classify VPX as a Subchapter S Corporation pursuant to 26 U.S.C. § 1362(a). Put simply, S Corporation status (as compared to the default C Corporation status) allows "relatively small corporations to elect not to be taxed on most or all of their income and, instead, to have their income, deductions and credits allocated to their shareholders." Douglas A. Kahn, Jeffrey H. Kahn, & Terrence G. Perris, Taxation of S Corporations 2 (2008).

On October 10, 2022, VPX—along with co-debtors Bang Energy Canada, Inc., JHO Intellectual Property Holdings, LLC, JHO Real Estate Investment, LLC, Quash Seltzer, LLC, Rainbow Unicorn Bev LLC, and Vital Pharmaceuticals International Sales, Inc.—filed a voluntary Chapter 11 bankruptcy petition. Five months later, on March 9, 2023, a reconstituted board of VPX removed Mr. Owoc from his position as Chief Executive Officer and terminated his membership on the board. But Mr. Owoc remained VPX's sole shareholder.

In July of 2023, Mr. Owoc filed an emergency motion for confirmation that the automatic bankruptcy stay, *see* 11 U.S.C.

24-14048               Opinion of the Court                    3

§ 362, did not apply to revocation of VPX's Subchapter S status, or, alternatively, for relief from the stay. The bankruptcy court denied the motion. It reasoned that "[b]ecause [VPX's] S election gives it the valued right to avoid tax liability, the S election is property of the estate and therefore protected by the automatic stay." *In re Vital Pharms.*, 655 B.R. 374, 392 (Bankr. S.D. Fla. 2023).

That same month, VPX sold its assets to Blast Asset Acquisition, LLC, a subsidiary of Monster Energy Company. Then, pursuant to the reorganization plan, VPX's remaining interests were automatically and irrevocably vested in a trust. Thereafter, Mr. Owoc filed an expedited motion for relief from the automatic stay so that he could terminate VPX's Subchapter S election. The bankruptcy court denied that motion.

Mr. Owoc appealed the first bankruptcy court decision to the district court, and the trustee moved to dismiss the appeal as moot. The district court denied the motion to dismiss. It then consolidated Mr. Owoc's appeals of the first and second bankruptcy decisions and granted his request for certification of a direct appeal to this court.

This appeal presents four issues: (1) whether this appeal is constitutionally or equitably moot; (2) whether the law of the case doctrine bars Mr. Owoc's arguments; (3) whether the bankruptcy court erred in concluding that VPX's Subchapter S status constituted property of the bankruptcy estate within the meaning of 11 U.S.C. § 541; and (4) whether the doctrine of laches precludes Mr. Owoc from seeking his requested relief. Following review of the

record and the parties' briefs, we reverse. On the merits, we hold that a corporate debtor's Subchapter S election is not property of the bankruptcy estate because that election belongs to the shareholder and not the corporate debtor.

## II

"'In bankruptcy, mootness comes in a variety of flavors,'" *see Reynolds v. Servisfirst Bank (In re Stanford)*, 17 F.4th 116, 121 (11th Cir. 2021) (quoting *In re PW, LLC*, 391 B.R. 25, 33 (9th Cir. BAP 2008)), and constitutional and equitable mootness are the two flavors relevant here. The trustee argues that Mr. Owoc's appeal is moot because the following events establishing VPX's federal income tax liability have occurred: (1) the sale of VPX's assets to Blast Asset Acquisition has closed; (2) VPX's remaining interests have been transferred to the trust; (3) VPX's final tax return as an S Corporation has been filed with the IRS; and (4) VPX's shares—held by Mr. Owoc—have been cancelled. In the trustee's view, Mr. Owoc cannot retroactively revoke or terminate VPX's Subchapter S status for the relevant tax year, and his requested relief cannot be granted.

## A

"Constitutional mootness is jurisdictional and derives from the case-or-controversy requirement of Article III." *In re Stanford*, 17 F.4th at 121. "We lack jurisdiction once an appeal becomes moot because it can no longer 'be characterized as an active case or controversy.'" *United States v. Alhindi*, 97 F.4th 814, 820 (11th Cir. 2024) (quoting *Adler v. Duval Cnty. Sch. Bd.*, 112 F.3d 1475, 1477 (11th Cir.

1997)). Within the meaning of Article III, "an appeal becomes moot 'only when it is impossible for a court to grant any effectual relief whatever to the prevailing party.'" *Id.* (quoting *Knox v. Serv. Emps. Int'l Union, Loc. 1000*, 567 U.S. 298, 307 (2012) (internal quotation marks omitted)). "That is, even if *full* relief is no longer available, an appeal does not become moot when *some* relief remains possible." *Id.* (citing *Church of Scientology of Cal. v. United States*, 506 U.S. 9, 12–13 (1992)).

Revocation of a company's Subchapter S status requires consent from the majority of its shareholders. *See* 26 U.S.C. § 1362(d)(1)(B) ("An election may be revoked only if shareholders holding more than one-half of the shares of stock of the corporation on the day on which the revocation is made consent to the revocation."). But the company—not its shareholders—must file a statement of revocation, signed by the corporate officer who is authorized to sign the company's Form 1120-S, with the IRS. *See* 26 C.F.R. §§ 1.1362-2(a), 1.1362-6(a)(3). Mr. Owoc concedes that he cannot compel VPX executives to file revocation paperwork with the IRS (and did not appeal that portion of the bankruptcy court's order).

But, Mr. Owoc says, the bankruptcy court could appoint him as an officer to submit the statement of revocation. And if the shares are reinstated, Mr. Owoc would seek to revoke the Subchapter S election. Alternatively, if the bankruptcy court rules that the shares may be reissued retroactively, Mr. Owoc unilaterally may

seek to terminate the Subchapter S status retroactively by transferring shares to an ineligible taxpayer pursuant to 26 U.S.C. § 1362(d)(2).

The trustee, and the government as amicus curiae, argue that the IRS lacks the authority to grant Mr. Owoc that relief under the plain text of the § 1362(d)(1)(C) of the Internal Revenue Code:

> (i) a revocation made during the taxable year and on or before the 15th day of the 3d month thereof shall be effective on the 1st day of such taxable year, and (ii) a revocation made during the taxable year but after such 15th day shall be effective on the 1st day of the following taxable year.

These dates for the 2023 tax year have long passed. But, if the bankruptcy court's order is reversed, Mr. Owoc argues that he may still seek retroactive relief from the IRS through a private letter ruling. A private letter ruling is "a written statement issued to a taxpayer or his authorized representative by the National Office [of the IRS] which interprets and applies the tax laws to a specific set of facts." 26 C.F.R. § 601.201(2). The Secretary of the Treasury has discretion in deciding whether to make a tax ruling retroactive. *See* 26 U.S.C. § 7805(b).

The government asserts that "case law" dictates that the IRS could not grant Mr. Owoc his requested retroactive relief but has not cited any case (or regulatory authority) stating that a private letter ruling could not override the ordinary rules for the S-termination year. *See* Gov't Amicus. Br. at 5. Even so, we need not decide

24-14048                 Opinion of the Court                 7

whether the IRS would likely or definitively grant such relief because constitutional mootness does not require hurdling such a high bar. The Supreme Court has cautioned us against "act[ing] as a court of first view, plumbing the [Tax] Code's complex depths in the first instance to assure ourselves that [the trustee] is correct about its contention that no relief remains legally available." *MOAC Mall Holdings LLC v. Transform Holdco LLC*, 598 U.S. 288, 296 (2023) (internal quotation marks and citation omitted).

The trustee's argument seems to ignore that courts can sometimes "undo" what has been done. *See id.* (quoting *Chafin v. Chafin*, 568 U.S. 165, 173 (2013)). Mr. Owoc has a concrete interest in the reversal of the bankruptcy court's order denying his request for confirmation that the automatic stay does not apply to revocation or termination of VPX's Subchapter S status. The effect of such a reversal on the ultimate tax status of VPX does not moot this case. Nor does the effect of a reversal on the transfer and sale of VPX's assets render this case constitutionally moot.

At this point, Mr. Owoc does not seek to revest himself with property from the trust. He does not claim ownership of any assets now owned by Blast. He instead seeks to retroactively relieve the tax burden passed onto him as the former sole shareholder of VPX. We are not convinced that it is *impossible* to grant such relief, and therefore this case is not constitutionally moot. *See Bennett v. Jefferson Cnty.*, 899 F.3d 1240, 1246 (11th Cir. 2018) (appeal by county sewer ratepayers of order confirming County's Chapter 9 plan was

constitutionally moot even if plan's consummation might limit the scope of remedies available to the ratepayers).

## B

"Equitable mootness is, as the name suggests, a doctrine of equity that moots an appeal because of (1) the effects of a reversal on third parties who have relied on a bankruptcy court's order or (2) the complexity and difficulty of unwinding a contested transaction." *In re Stanford*, 17 F.4th at 121 (citing *In re PW, LLC*, 391 B.R. at 33). "If a third party has altered its position in reliance on a bankruptcy court's order or a transaction is simply too complex or difficult to unwind, an appeal may be moot as a matter of equity." *Id.* "Equitable mootness is a discretionary doctrine," not a jurisdictional one. *Fla. Agency for Health Care Admin. v. Bayou Shores SNF, LLC (In re Bayou Shores SNF, LLC)*, 828 F.3d 1297, 1328 (11th Cir. 2016).

We consider several factors, including (1) whether a stay pending appeal has been obtained; (2) whether the plan has been substantially consummated; (3) whether the type of relief sought by the appellant would affect the interest of third parties; and (4) whether the requested relief would affect the reemergence of the debtor as a revitalized entity. *See Bennett*, 899 F.3d at 1248; *Ullrich v. Welt (In re Nica Holdings, Inc.)*, 810 F.3d 781, 786 (11th Cir. 2015) (citing *First Union Real Estate Equity & Mortg. Invs. v. Club Assocs. (In re Club Assocs.)*, 956 F.2d 1065, 1069 n.11 (11th Cir. 1992)). "No single factor is determinative, and a court must consider 'all

the circumstances of the case to decide whether it can grant effective relief.'" *In re Nica Holdings, Inc.*, 810 F.3d at 786 (quoting *In re Club Assocs.*, 956 F.2d at 1069).

### 1

Mr. Owoc argues that the trustee waived the equitable mootness argument by not raising it in the district court. We assume without deciding that an appellee need not raise issues before the district court where, as here, the appellant obtained a direct appeal to the circuit court. First, some courts have raised equitable mootness *sua sponte. See, e.g., Pitassi v. Deutsche Bank Nat'l Tr. Co. (In re Pitassi)*, 666 B.R. 706, 713 (B.A.P. 1st Cir. 2025). Second, and practically, the issues that equitable mootness seeks to prevent—that is, the unfolding of transactions pursuant to a bankruptcy plan absent a stay—are exacerbated in a situation like this one where more transactions have taken place since the ruling in the bankruptcy or district court. *See In re Nica Holdings, Inc.*, 810 F.3d at 786. Third, this is an area where we have discretion; "[e]quitable mootness is a discretionary doctrine that permits courts sitting in bankruptcy appeals to dismiss challenges (typically to confirmation plans) when effective relief would be impossible." *In re Bayou Shores SNF, LLC*, 828 F.3d at 1328.

### 2

We therefore take up the equitable mootness factors. The parties agree that Mr. Owoc did not seek a stay pending appeal. He maintains that he did not do so because (1) based on its ruling that

VPX's Subchapter S status was property of the estate, not the shareholders, the bankruptcy court would likely not grant him a stay pending appeal; (2) he is not challenging the plan itself; and (3) he is not seeking to unwind transactions that were taken in reliance on the plan.

Mr. Owoc is, however, seeking to reinstate his shares. Below, he sought to enjoin the trustee from extinguishing his equity interest in VPX, a request which was denied by the bankruptcy court. These shares would be worthless because VPX's assets have been sold to Blast. Therefore, the reinstatement of shares would simply put Mr. Owoc back in the position to seek revocation or termination.

The trustee says that a change in VPX's tax status will burden the trust, but the trust is not an affected third party here. Indeed, the bankruptcy court made a similar finding on the record in the related adversarial proceeding. *See* Bankr. D.E. 29 at 50, No. 23-01246-PDR (S.D. Fla. Dec. 30, 2023) ("No other parties would seem to be impacted by that result, because if reinstated, and the S-election is revoked, then in theory Mr. Owoc's tax liability would be terminated, and the estate would be obligated for the taxes, but that then becomes an issue between the IRS and the estate."). If VPX is worthless as an entity, it is unclear how retroactively changing its tax status will burden its creditors. The sheer complexity of that issue does make Mr. Owoc's requested relief impossible to provide.

Accordingly, the first and second factors—whether a stay pending appeal has been obtained and whether the plan has been substantially consummated—weigh against deciding Mr. Owoc's appeal. But the third and fourth factors—whether the type of relief sought by the appellant would affect the interest of third parties, and whether the requested relief would affect the reemergence of the debtor as a revitalized entity—weigh in favor of deciding the appeal. The latter two factors demonstrate that, while a reversal of the bankruptcy court's decision will present complexities on remand, we can still grant some effective relief.

Mr. Owoc is presently burdened by the bankruptcy court's imposition of the automatic stay on VPX's Subchapter S status. Because reversal of the bankruptcy court's decision would provide Mr. Owoc a chance to argue for reinstatement of his shares and request relief from the IRS, we can afford him relief without greatly disturbing the plan. *See* 7 Collier on Bankruptcy ¶ 1129.09 (16th ed. 2019) (explaining that equitable mootness reserves a court's "prudential and discretionary ability to decline to rule on the appeal . . . when effective relief would be impossible") (citing *In re Nica Holdings, Inc.*, 810 F.3d at 786). This appeal is not equitably moot.

### III

The trustee next argues that the appeal is defeated by Mr. Owoc's failure to immediately appeal the bankruptcy court's July 30, 2023, order denying, in part, his emergency motion for confirmation that the automatic stay does not apply to revocation of

VPX's Subchapter S status. In other words, if Mr. Owoc wanted to continue to pursue Subchapter S status revocation as a form of relief (or dispute the bankruptcy court's preliminary finding that VPX controlled the decision to revoke its Subchapter S status or make the "close the books" election), he needed to appeal this interim order.

This, the trustee says, is because the July 30 order was a final order on Mr. Owoc's only valid form of requested relief—revocation of the Subchapter S status under § 1362(d)(1)—and thus his failure to appeal this order is fatal. Moreover, the trustee argues that the law of the case doctrine applies and thus Mr. Owoc waived his rights to challenge the bankruptcy court's conclusions in the revocation order.

Mr. Owoc responds that the July 30 order was not a final appealable order within the meaning of 28 U.S.C. § 158(a)(1). As he sees it, that order only partially denied his motion and deferred ruling on whether the Subchapter S status was the property of the estate. We agree with Mr. Owoc's reading of the July 30 order.

It is well-settled that "a final order in a bankruptcy proceeding is one that ends the litigation on the merits and leaves nothing for the court to do but execute its judgment." *Clay Cnty. Bank v. Culton (In re Culton)*, 111 F.3d 92, 93 (11th Cir. 1997) (citing *In re Tidewater Group, Inc.*, 734 F.2d 794, 795–96 (11th Cir. 1984)). *Accord Barben v. Donovan (In re Donovan)*, 532 F.3d 1134, 1136–37 (11th Cir. 2008) (stating that "to be final, a bankruptcy court order must com-

pletely resolve all of the issues pertaining to a discrete claim, including issues as to the proper relief") (internal quotation marks and citations omitted). In its July 30 order, the bankruptcy court ruled on only "part of the relief requested" in Mr. Owoc's motion. Bankr. D.E. 1746 at 2, No. 22-17842-PDR (S.D. Fla. Sept. 30, 2023). It declined to compel VPX "to file a statement revoking its S Election and to file an election allocating its income and expenses based on the 'close the books' approach under 26 U.S.C. § 1362 and Treasury Regulation § 1-1362-6." *Id*. It then deferred ruling on other issues raised by Mr. Owoc's motion, including other avenues for Mr. Owoc to "attempt to effectuate a revocation" of VPX's S election. *See id*.

Moreover, the bankruptcy court "reserve[d] jurisdiction to enter a memorandum opinion more fully explaining its reasoning for declining to compel [VPX] to file a statement revoking its S [e]lection and to file an election allocating its income and expenses based on the 'close the books' approach[.]" *Id*. Accordingly, the July 30 order did not "completely resolve all of the issues pertaining" to Mr. Owoc's motion relating to the revocation of VPX's Subchapter S status. *See In re Donovan*, 532 F.3d at 1137.

For the same reason, this is not "a legal decision made at one stage of the litigation, unchallenged in a subsequent appeal when the opportunity existed," that "becomes the law of the case for future stages of the same litigation." *United States v. Escobar-Urrego*, 110 F.3d 1556, 1560 (11th Cir. 1997) (quoting *Williamsburg Wax Museum v. Historic Figures*, 810 F.2d 243, 250 (D.C. Cir. 1987)). Mr.

14                  Opinion of the Court                  24-14048

Owoc properly waited for the final appealable order entered on October 6, which expanded the bankruptcy court's reasoning from the July 30 order.

Finally, it is not true that Mr. Owoc only sought one form of relief below, thereby waiving arguments relating to different forms of relief here. In his motions below, Mr. Owoc sought confirmation that the automatic stay would not apply to revocation *or* termination of VPX's Subchapter S status. We are therefore assured that Mr. Owoc has cleared any procedural hurdles. His appeal is not moot, constitutionally or equitably, and he did not waive or forfeit any arguments relating to our substantive review.

## IV

We now consider the heart of this appeal: whether Subchapter S status is property of the bankruptcy estate. An automatic stay in a bankruptcy proceeding applies to "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate." 11 U.S.C. § 362(a)(3). *Accord* 2 Norton Bankr. L. & Prac. § 43:4 (3d ed. 2008 & Apr. 2026 update) ("By its terms, the automatic stay imposed under Code § 362(a) only applies to actions against the debtor, property of the debtor, and property of the estate."). The automatic stay, therefore, does not apply to Mr. Owoc's attempts to revoke or terminate VPX's S status if the status is not property of VPX or its estate.

## A

We review "*de novo* the question of law whether a debtor's interest is property of the bankruptcy estate." *Witko v. Menotte (In*

24-14048                Opinion of the Court                15

*re Witko)*, 374 F.3d 1040, 1042 (11th Cir. 2004) (citing *Bell-Tel Fed. Credit Union v. Kalter (In re Kalter)*, 292 F.3d 1350, 1352 (11th Cir. 2002)). "De novo review requires the court to make a judgment independent of the bankruptcy court's, without deference to that court's analysis and conclusions." *Kaiser Aerospace & Elecs. Corp. v. Teledyne Indus., Inc. (In re Piper Aircraft Corp.)*, 244 F.3d 1289, 1295 (11th Cir. 2001) (citation omitted).

**B**

The Bankruptcy Code defines "property of the estate" as "all legal or equitable interests of the debtor in property as of the commencement of the case[.]" 11 U.S.C. § 541(a)(1). "Although the estate is construed broadly, Congress expressly cautioned that the Bankruptcy Code is not intended to expand the debtor's rights against others more than they exist at the commencement of the case." *In re Witko*, 374 F.3d at 1042–43 (internal quotation marks and citations omitted). "The trustee could take no greater rights than the debtor himself had." *Id.* at 1043 (alterations adopted). Although state law often governs the extent of a debtor's property interests, the parties generally agree that the question here is resolved by the provisions of the Internal Revenue Code concerning Subchapter S status.

The Third Circuit has answered the question before us, holding that Subchapter S status, "a tax classification over which the debtor has no control[,] is not a 'legal or equitable interest of the debtor in property' for purposes of § 541." *Majestic Star Casino, LLC v. Barden Dev., Inc. (In re Majestic Star Casino, LLC)*, 716 F.3d 736,

757 (3d Cir. 2013) (alteration adopted). As explained below, we agree with the Third Circuit's conclusion.

The parties' arguments focus on who exercises control over VPX's tax status and who reaps the benefits of the continuing Subchapter S status. We address each in turn.

It is axiomatic that a property interest often includes the property owner's right to dominion and control. *See, e.g.,* 73 C.J.S. Property § 43 (2014 ed. & Apr. 2026 update) ("An incident of ownership is the right to exercise dominion and control over one's property."); Black's Law Dictionary 967 (12th ed. 2024) (defining a property interest as an "interest, perhaps including rights of possession and control"); *United States v. Craft*, 535 U.S. 274, 283 (2002) (stating that "in determining whether a federal taxpayer's state-law rights constitute property or rights to property, the important consideration is the breadth of the control the taxpayer could exercise over the property") (internal quotation marks omitted, citation omitted, and alteration adopted); *Arrowsmith v. United States (In re Health Diagnostic Lab'y, Inc.)*, 578 B.R. 552, 566 (Bankr. E.D. Va. 2017) (collecting cases characterizing control as the factor "of critical importance" in the question of whether Subchapter S status constitutes a property right). The critical events concerning Subchapter S status largely fall within the shareholders' control. For example, the election of such status requires unanimous shareholder consent. *See* 26 U.S.C. § 1362(a)(2) ("An election under this subsection shall be valid only if all persons who are shareholders in

such corporation on the day on which such election is made consent to such election.").

The termination of Subchapter S status can be achieved in three ways. First, the majority of shareholders can consent to revoke that status. *See* § 1362(d)(1)(B). Second, the company can cease to be a small business corporation. *See* § 1362(d)(2). This would occur when an individual shareholder transfers his or her shares to a corporate entity. *See* §§ 1361(b)(1)(B), (c)(2), (c)(6). This could also occur if a shareholder transfers his or her shares to "a nonresident alien." § 1361(b)(1)(C). It is also true that a corporation could also terminate Subchapter S status by issuing new classes of stock or by issuing more than 100 shares to individual shareholders. *See* §§ 1361(b)(1)(A), (b)(1)(D). Shareholders could then, of course, vote to replace the board members of the corporation if they are displeased with the decisions concerning the issuance of shares. Moreover, "a corporation's directors must observe their fiduciary responsibilities in issuing new shares; otherwise the shares may be subject to cancellation." 3 Cox & Hazen, Law of Corporations § 16:22 (3d ed. 2010 & Nov. 2025 update). Third, Subchapter S status ceases when the corporation (1) "has accumulated earnings and profits at the close of each of 3 consecutive taxable years, and [(2)] has gross receipts for each of such taxable years more than 25 percent of which are passive investment income." § 1362(d)(3)(A)(i). Passive investment income is contingent on "market action." *In re Health Diagnostic Lab'y, Inc.*, 578 B.R. at 567. Accordingly, the shareholders control the creation and termination of eligibility for Subchapter S status. *See id.* ("The corporation has no unilateral control

over any of the events that could trigger S corporation status revocation."). *See also In re Majestic Star Casino*, 716 F.3d at 755 ("The tax status of the entity is entirely contingent on the will of the shareholders.").

Setting aside the right to control Subchapter S status, the trustee focuses on the corporation's right to benefit from that status. This position seeks support from the Supreme Court's pre-Bankruptcy Code decision in *Segal v. Rochelle*, 382 U.S. 375 (1966), which held that a certain tax attribute (net operating loss carrybacks) was property of the estate under § 70(a)(5) of the Bankruptcy Act of 1898.

"Subsequent cases extended the holding in *Segal* to the right to use NOLs to offset future tax liability (a 'loss carryforward')." *In re Majestic Star Casino, LLC*, 716 F.3d at 753. *See also Official Comm. of Unsecured Creditors v. PSS Steamship Co. (In re Prudential Lines, Inc.)*, 928 F.2d 565, 573 (2d Cir. 1991) (holding "that the right to a carryforward attributable to its $74 million NOL was property of [the] bankruptcy estate"). "NOLs are tax deductible and may be carried back and applied against income in previous years (carryback), or carried forward and applied against income in subsequent years (carryforward)." *Id.* at 567 (citing 26 U.S.C. § 172 (1988)).

NOLs differ from Subchapter S status in material ways. For example, "a debtor in possession of NOLs has a defined amount of them at the time of the bankruptcy filing; they are a function of the debtor's operations prior to bankruptcy and are not subject either

to revocation by the shareholders or termination by the IRS." *In re Majestic Star Casino, LLC*, 716 F.3d at 755. Additionally, while the value of Subchapter S status is variable, "[t]he value of an NOL is readily determinable as a tax refund immediately available to the bankruptcy estate to the extent that it is applied to prior years' earnings, and it is still subject to relatively clear estimation if the debtor decides to carry it forward against future earnings." *Id.* at 755–56.

We think that there are two fundamental problems with applying the reasoning of the NOL cases to Subchapter S status. First, by its terms, the Internal Revenue Code "does not, and cannot, guarantee a corporation's right to S-corp status, because the corporation's shareholders may elect to revoke that status 'at will.'" *Id.* at 756 (quoting § 1362(d)(1)(B)). Second, we cannot accept that Subchapter S status confers a benefit on the estate on the theory that the corporation would keep the proceeds from the sale but pass the tax liability to the shareholders, and then would have more money to pay creditors. *See* 5 Collier on Bankruptcy ¶ 541.01 (16th ed. 2019) ("It is from estate property that that the debtor's creditors will be paid."). To do so would expand the assets of the estate beyond what it was at the commencement of the bankruptcy proceeding. *See* 11 U.S.C. § 541(a)(1). And that we cannot do. *See, e.g., In re Suter*, 181 B.R. 116, 119 (Bankr. N.D. Ala. 1994) ("Bankruptcy does not create interests in property that did not exist otherwise.") (citing *In re Louisiana World Exposition, Inc.*, 832 F.2d 1391, 1399 (5th Cir. 1987)). *Cf. United States v. Annamalai*, 939 F.3d 1216, 1228 (11th Cir. 2019) (post-petition receivables and donation were not part of the bankruptcy estate of a temple). "Thus, the analogy of S-corp

status to NOLs is of limited validity." *In re Majestic Star Casino, LLC*, 716 F.3d at 756.

Enjoyment of a benefit alone does not create a property interest. *See Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 577 (1972) ("To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it."). Here it is the substantial control that the shareholders exercise over the corporation's tax status that sounds in property rights. Put differently, "a corporation cannot claim a legal or equitable property interest to a valuable benefit that another party has the power to legally revoke at any time." *In re Health Diagnostic Lab'y, Inc.*, 578 B.R. at 565 (citing *In re TMT Procurement Corp. v. Vantage Drilling Co.*, 764 F.3d 512, 523–24 (5th Cir. 2014)). We therefore conclude that Subchapter S status is not property of the estate.

## V

The trustee argues, in any event, that the doctrine of laches should bar Mr. Owoc's secondary request—that is, relief from the automatic stay so that he may terminate, rather than revoke, VPX's Subchapter S status under § 1362(d)(2). In the trustee's view, Mr. Owoc inexcusably delayed his request for the bankruptcy court's approval to terminate VPX's status until after the closing of the sale. Mr. Owoc responds that he "could not have known" that the bankruptcy court "would depart from the one court of appeals and every lower court to address the issue of whether S Corporation

status is property of the estate in the last ten years." Br. for Appellant at 43. He maintains that he "moved quickly to lift the automatic stay to terminate VPX's status as an S Corporation under 26 U.S.C. § 1362(d)(2) to ensure that he had sought every possible means of relief below." *Id.*

"To establish laches, [the moving party] must demonstrate 1) a delay in asserting a right or a claim, 2) that the delay was not excusable, and 3) that there was undue prejudice to the party against whom the claim is asserted." *AmBrit, Inc. v. Kraft, Inc.*, 812 F.2d 1531, 1545 (11th Cir. 1986). "'When the district court has weighed the proper factors in determining whether a defendant has proven the elements of a laches defense, we review the district court's decision for abuse of discretion.'" *Pinnacle Adver. & Mktg. Grp. v. Pinnacle Adver. & Mktg. Grp., LLC*, 7 F.4th 989, 1006 (11th Cir. 2021) (quoting *Angel Flight of Ga., Inc. v. Angel Flight Am., Inc.*, 522 F.3d 1200, 1207 (11th Cir. 2008)). We have applied the doctrine of laches to bankruptcy proceedings before, *see Gen. Lending Corp. v. Cancio*, 578 F. App'x 832, 834 (11th Cir. 2014), and Mr. Owoc does not challenge its general applicability in a bankruptcy setting.

The bankruptcy court addressed the doctrine of laches in two separate orders. *See* D.E. 1951, 2266. The trustee does not cross-appeal the district court's decision declining to apply the doctrine of laches to Mr. Owoc's first request relating to revocation of Subchapter S status. The second request relating to Mr. Owoc's right to terminate the status post-dated the bankruptcy court's determination that the status was the property of the estate.

It makes little sense for us to review the bankruptcy court's decision to apply laches when the property of the estate issue undergirds that decision. The bankruptcy court should decide in the first instance whether our reversal of its decision allows Mr. Owoc to pursue termination in addition to revocation and thoroughly consider whether Mr. Owoc's argument is barred by laches. This will include consideration of prejudice to the estate if Mr. Owoc can now terminate the Subchapter S election post-closing of the sale, what the impact of that termination will be on the creditors, when the termination would take effect, and what the likely tax impact on Mr. Owoc would be from termination.

## VI

We reverse the bankruptcy court's denial of Mr. Owoc's motions for confirmation that the automatic stay does not apply to revocation or termination of VPX's Subchapter S status, and remand for proceedings consistent with this opinion.

**REVERSED AND REMANDED.**